UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KEVIN ALVAREZ,

                                        Plaintiff,              <u>COMPLAINT</u>

                    -against-                                   ECF Case

THE CITY OF NEW YORK; DETECTIVE                                 <u>Jury Trial Demanded</u>
CHRISTOPHER HEREDIA, TAX ID #938656; SGT.
ROBERT KELLY, TAX ID #924018; UC #C0039; LT.
ANTHONY RONDA, TAX #894324; P.O. ROBERT
FRANK, TAX #940159; DETECTIVE KEITH
CARPENTER, TAX ID #932419; DETECTIVE JAMAL
HAIRSTON, TAX ID #941875; the individual defendants
sued individually and in their official capacity,

                                        Defendants.

------------------------------------------------------------------------X


## <u>PRELIMINARY STATEMENT</u>

1.      This is an action for money damages brought pursuant to the Civil Rights

Act of 1871, 42 U.S.C. §§ 1983 and 1988 for the defendants' commissions of acts under color of

law in violation of plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments

to the Constitution of the United States.


2.      Mr. Alvarez' complaint stems from incident(s) that began on or about July

6, 2013 and continued until on or about November 12, 2014.  During the incident(s), Mr. Alvarez

was subjected to a false arrest and imprisonment, excessive force, malicious prosecution,

retaliation for free speech, an unlawful search and seizure, intentional and negligent infliction of

emotional distress, harassment, unconstitutional conditions of confinement, and to a deprivation

of his constitutional, civil, and common law rights.

3.      During the incident(s), Mr. Alvarez was held as a pre-trial detainee at New York County Central Booking.

4.      Defendants' actions were contrary to law, contrary to sound professional police practice, and contrary to the norms of a civilized society.  This complaint, arising from these outrageous and unlawful acts, seeks compensatory and punitive damages, costs, disbursements, and attorneys' fees pursuant to applicable federal civil rights law.

## JURISDICTION & VENUE

5.      This action arises under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in that, inter alia, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

8.      The plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

9.      Plaintiff Kevin Alvarez is a citizen of the United States and a resident of the State of New York, New York County.

10.      Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation organized under the laws of the State of New York.

11.      The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining

custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitution and laws of the United States and the State of New York.

12.    At all relevant times herein, defendant Christopher Heredia was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

13.    At all relevant times herein, defendant Heredia held the rank of detective.

14.    At all relevant times herein, defendant Heredia's Tax ID # was 938656.

15.    At all relevant times herein, defendant Heredia's command was the Narcotics Borough Manhattan North.

16.    At all relevant times herein, defendant Robert Kelly was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

17.    At all relevant times herein, defendant Kelly held the rank of Sergeant.

18.    At all relevant times herein, defendant Kelly's Tax ID # was 924018.

19.    At all relevant times herein, defendant Kelly's command was the Narcotics Borough Manhattan North.

20.     At all relevant times herein, defendant Anthony Ronda was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

21.     At all relevant times herein, defendant Ronda held the rank of lieutenant.

22.     At all relevant times herein, defendant Ronda's Tax ID # was 894324.

23.     At all relevant times herein, defendant Ronda's command was the Narcotics Borough Manhattan North.

24.     At all relevant times herein, defendant UC #C0039 was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

25.     Plaintiff is unable to determine the actual name or rank of defendant UC #C0039.

26.     At all relevant times herein, defendant UC #C0039's command was the Narcotics Borough Manhattan North.

27.     At all relevant times herein, defendant Robert Frank was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

28.     At all relevant times herein, defendant Heredia held the rank of police officer.

29.     At all relevant times herein, defendant Frank's Tax ID # was 940159.

30.     At all relevant times herein, defendant Frank's command was the Narcotics Borough Manhattan North.

4

31.     At all relevant times herein, defendant Keith Carpenter was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

32.     At all relevant times herein, defendant Carpenter held the rank of detective.

33.     At all relevant times herein, defendant Carpenter's Tax ID # was 932419.

34.     At all relevant times herein, defendant Carpenter's command was the Narcotics Borough Manhattan North.

35.     At all relevant times herein, defendant Jamal Hairston was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

36.     At all relevant times herein, defendant Hairston held the rank of detective.

37.     At all relevant times herein, defendant Hairston's Tax ID # was 941875.

38.     At all relevant times herein, defendant Hairston's command was the Narcotics Borough Manhattan North.

39.     The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

40.     On or about June 26, 2013 at approximately 4:30 p.m., at and in the vicinity of 40 West 111 Street, in the County and State of New York, the individual defendants were part of a team of police officers conducting a "buy and bust operation."

41.     At the above-time and place, the individual defendant police officers, were focused on the location of 40 West 111th Street and defendant UC #C0039 allegedly went inside of this location with two individuals, and engaged in a narcotics transaction.  As a result of this transaction, the defendant UC #C0039 allegedly obtained a quantity of crack cocaine in exchange for 30 dollars of pre-recorded buy money.

42.     Shortly thereafter, the defendant UC #C0039 radioed to his field team in order to effect the arrest of the two individuals who had just conducted the transaction.

43.     On or about June 26, 2013 at approximately 4:50 p.m., the field team associated with UC #C0039 arrested an individual, non-party Lamont Sloan, and recovered the pre-recorded buy money, subject to his arrest.  The second subject allegedly involved in the transaction was not apprehended at the time of Mr. Sloan's arrest (hereinafter referred to as "the lost subject").

44.     On or about June 26, 2013 at approximately 10:00 p.m., the defendant UC #C0039 prepared a police report, entitled "Buy Report/Complaint Follow-Up Information" (hereinafter referred to as "the report") in regards to what occurred during the successful buy and bust operation.

45.     In the report, the defendant UC #C0039 indicated that the lost subject was approximately in his late 30s, 5'9"-5'10" tall, 180-190 pounds, wearing a white tank top, red shorts, tattoos on his forearms and neck, and a medium chin strap beard with a mustache.

46.     Thereafter, on or about July 6, 2013, at approximately 7:20 p.m., the defendant UC #C0039 was at and in the vicinity of 40 West 111th Street, in the County and State of New York, when he observed the non-party Lamont Sloan in front of this location along with the plaintiff, Kevin Alvarez.

47.     On July 6, 2013, the plaintiff, Kevin Alvarez, was an African-American man, aged 26 years old, 5'06" tall, 160 pounds, with a full sleeve of tattoos on one arm, no tattoos on his neck, and a full beard and mustache.

48.     On July 6, 2013, at approximately 7:30 p.m., without any probable cause to do so, one of the defendant officers came up to Mr. Alvarez and placed excessively tight handcuffs about his wrists.

49.     Each of the defendant officers was present during, and participated in, Mr. Alvarez' arrest.

50.     While Mr. Alvarez was in handcuffs, the defendant officers searched him. No contraband was recovered during this search.  No pre-recorded buy money was recovered during this search.

51.     After arresting him, a number of the defendant police officers placed Mr. Alvarez into a waiting police vehicle, in which he was driven around – handcuffed behind his back the entire time – for several hours.

52.     Mr. Alvarez was eventually transported to an NYPD precinct in New York, New York and booked on charges of criminal sale of a controlled substance in the Third Degree (N.Y. Penal Law § 220.39) for the alleged buy from June 26, 2013.

53.     Mr. Alvarez complained to the defendant police officers that the handcuffs were excessively tight and that he needed them to be loosened.  The defendant police officers ignored Mr. Alvarez' pleas to loosen the cuffs.

54.     Mr. Alvarez continually insisted that he was innocent of any alleged crimes involving the narcotics transaction between Mr. Sloan and the defendant UC #C0039. Mr. Alvarez continually insisted that he was in Westchester County on the date and time that the alleged narcotics transaction occurred.

55.     Mr. Alvarez was eventually brought by the defendant police officers to Central Booking at 100 Centre Street.

56.     A felony complaint was filed against Mr. Alvarez charging him with Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)).

57.     After more than 24 hours, Mr. Alvarez was arraigned on the felony complaint and bail was set in the amount of 7,500 bond, or 4,000 cash.

58.     The NYPD has formal polices, contained in its Patrol Guide, by which it authorizes the conduct of buy and bust operations, arrest and prosecution of those involved in the sale of narcotics under specific guidelines.

59.     This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Complaint, a de facto policy and practice of

arresting innocent persons found at the scene of narcotics buy and bust operation other than those specified in the Patrol Guide or NYPD directives in order to meet productivity goals and quotas.

60.    Upon information and belief, while Mr. Alvarez was incarcerated at the NYPD precinct and in New York Central Booking, awaiting arraignment, the officers who arrested him, acting in concert, and pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that plaintiff had committed various crimes, and based on the officers' false allegations, the New York County District Attorney's Office prosecuted Mr. Alvarez in Court under Criminal Docket #2013NY052430.

61.    Upon information and belief, the officers who arrested plaintiff maliciously withheld relevant information from the New York County District Attorney's Office, showing that Mr. Alvarez was innocent of all charges.

62.    Thereafter, shortly after arraignment, Mr. Alvarez posted bail and was released from custody.

63.    Mr. Alvarez was forced to hire a private attorney in order to defend himself against the false allegations that were brought against him.

64.    Thereafter, on or about August 6, 2013, the defendant UC #C0039 testified before a grand jury convened in the County and State of New York investigating the alleged narcotics transaction.   The defendant UC #C0039, acting in concert with the other defendant officers, and pursuant to a conspiracy, falsely and maliciously told the grand jury that the plaintiff had committed various crimes, and based on the officer's false allegations, the grand jury indicted the plaintiff under Indictment Number 3659-2013 for the crimes of Criminal Sale of a Controlled Substance in the Third Degree, in violation of Penal Law § 220.39(1).

65.     The plaintiff, Kevin Alvarez continued to claim his innocence of this crime and produced cell-site data that directly refuted the defendant police officers' allegations of what occurred on July 6, 2013 – namely that he was present during the alleged buy and bust operation.

66.     Further, the plaintiff Kevin Alvarez does not bear a resemblance to the description of the "lost subject" from the July 6, 2013 alleged buy and bust operation.

67.     On November 12, 2014, the defendant UC #C0039 testified at a Hinton/Wade hearing before the Honorable Edward J. McLaughlin, J.S.C.   Following the testimony of the defendant, UC #C0039, the New York County District Attorney's Office (hereinafter referred to as "DANY") began to doubt the viability of the testimony of UC #C0039 concerning the allegation that plaintiff was the perpetrator of the crime on July 6, 2013.

68.     Thereafter, on or about March 3, 2015, the New York County District Attorney's Office submitted a Recommendation of Dismissal to the Supreme Court, New York County.   The Recommendation of Dismissal is attached to this Complaint as **Exhibit A** (hereinafter referred to as "ROD").

69.     In the ROD, the DANY recommended that the indictment be dismissed against Mr. Alvarez; based upon this recommendation, the indictment was dismissed by Judge Obus of the Supreme Court, New York County.

70.     In the ROD, the DANY makes the following conclusions concerning the arrest of plaintiff and the subsequent ID of him by defendant UC #C0039:

a. Cell-site records that were provided to the DANY corroborated the plaintiff's contentions that he was uninvolved in the crime on July 6, 2013;

b. Two separate alibis provided statements to the DANY that corroborated that the plaintiff was in Westchester County prior to the commission of the crime such that it was nearly impossible for him to have committed the crime on July 6, 2013;

c. License plate readers verified that the plaintiff was not in New York County prior to the commission of the crime such that it was nearly impossible for him to have committed the crime on July 6, 2013; and,

d. The physical description provided by the defendant UC #C0039 contradicts the physical description of the plaintiff such that no reasonable inference can be made other than that his original description of the "lost subject" was inaccurate – this was directly contradicted by the defendant UC #C0039's testimony at the Hinton/Wade Hearing that he's been an officer for over 15 years and pays close attention to physical details of suspects because he has to identify them at later dates.

71.   In short, the DANY dismissed all charges that had been brought against the plaintiff because they did not believe the testimony of defendant UC #C0039 – testimony that had been sworn to in the criminal court complaint, at the grand jury presentment, and at the Hinton/Wade hearing.

11

72.     The above-stated malicious prosecution was initiated without probable cause to believe that the prosecution would be successful and without regard to Mr. Alvarez's innocence.

73.     The above-stated malicious prosecution was initiated with malice because it was not based upon probable cause.

74.     The above-stated malicious prosecution terminated in Mr. Alvarez's favor on March 4, 2015 when the charges were dismissed and sealed against him.

75.     The above-stated malicious prosecution caused a significant post-arraignment liberty restraint on Mr. Alvarez, namely the period of time that he spent incarcerated and the numerous appearances he was required to make before the charges were dismissed and sealed.

76.     Upon information and belief, the arrest of the plaintiff Kevin Alvarez was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by the defendant City of New York.

77.     Upon information and belief, the arrest of the plaintiff Kevin Alvarez was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of defendant City of New York's police department.

78.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may be inferred as a finding of fact when, on June 24, 2010, the court in *Floyd v. City of New York*, United States District Court, Southern District of New York, 08 CV 1034, ordered the release of documentation in the possession of the defendant New York City Police Department's

Internal Affairs Bureau, which investigates claims of serious misconduct and corruption of members of the NYPD.  The court held that the plaintiff in that case, in order to prove the existence of unconstitutional arrest quotas, had overcome the law enforcement privilege due to the strong public interest in uncovering the civil rights violations alleged in the Complaint, and by demonstrating a compelling need to review such documentation.

79.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy was confirmed as a finding of fact when, on February 18, 2011, the jury in *Bryant v. City of New York*, Kings County Supreme Court Docket #022011/2007, found that the plaintiff in that case's arrest had resulted from a policy "regarding the number of arrests officers were to make that violated plaintiff's constitutional rights and contributed to her arrest" imposed by defendant City of New York.

80.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may additionally be inferred from repeated occurrences of similar wrongful conduct, as documented in lawsuits including but not limited to the following civil rights actions filed against the City of New York:

      a.   *Alvin Williams v. The City of New York, et al.*, United States District Court, Southern District of New York, 05-cv-4013.

      b.   *Corey Williams v. The City of New York, et al.*, United States District Court, Eastern District of New York, 07-cv-5362.

      c.   *Joseph Malachi LaDoucier v. The City of New York, et al.*, United States District Court, Southern District of New York, 10-cv-5089.

81.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on November 8, 2010, that commanders are permitted to set "productivity goals."[1]

82.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn.  *See* fn1.

83.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by WABC-TV/DT, including, among other admissions, a 41st precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month enforcement quota, as reported by the media on March 3, 2010.[2]

84.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as

---

[1] Fanelli, James, "Cops at Brooklyns Crime-Ridden 77th Precinct Told to Meet Quotas for Moving Violations, Memos Say," New York Daily News, November 8, 2010.  Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/2010/11/08/2010-11-08_cops_told_to_meet_quotas.html.

[2] Hoffer, Jim, "NYPD Officer Claims Pressuer to Make Arrest," WABC News, March 3, 2010. Article incorporated by reference herein and available online at hhtp://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

directed by their superiors even if they must void the arrest at the end of their shifts, as reported by the media on May 11, 2010.[3]

## FIRST CLAIM

### (FALSE ARREST UNDER FEDERAL AND STATE LAW / UNLAWFUL SEARCH AND SEIZURE)

85.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

86.     Defendants falsely arrested plaintiff without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime.

87.     Defendants unlawfully searched plaintiff and seized him after their unlawful search returned no results for contraband or firearms.

88.     Accordingly, defendants are liable to plaintiff for false arrest and unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

89.     Accordingly, defendants are liable to plaintiff for false arrest and imprisonment and unlawful search and seizure under New York State law.

## SECOND CLAIM

### (EXCESSIVE FORCE UNDER FEDERAL LAW)

90.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

---

[3] Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into a Ghost Town."  Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/

91.     The individuals use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiff pain and injury.

92.     Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

### (DENIAL OF THE SIXTH AMENDMENT RIGHT TO A FAIR TRIAL)

93.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

94.     Defendants are liable to plaintiff because they created false information likely to influence a jury's decision and forwarded that information to prosecutors, violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## FOURTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

95.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

96.     Defendants are liable to plaintiff because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff.

## FIFTH CLAIM

### (42 U.S.C. § 1985 CONSPIRACY)

97.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

98.     Defendants are liable to plaintiff because they conspired against plaintiff based on racial or other invidiously discriminatory animus for the purpose of depriving plaintiff of equal protection of the privileges and immunities under the law, and committed an act in furtherance of the conspiracy, which injured plaintiff.

## SIXTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

99.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

100.    Defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the criminal court(s), which alleged plaintiff had committed various crimes; and based upon these false statements, prosecutors prosecuted plaintiff until the case against plaintiff were dismissed in their entirety.

101.    The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

102.    The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

103.    The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

17

## SEVENTH CLAIM

## (42 U.S.C. § 1983 AGAINST ALL DEFENDANTS)

104.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

105.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

106.     All of the aforesaid acts deprived plaintiff Kevin Alvarez of his rights, privileges, and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

107.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officer, with all of the actual and/or apparent authority attendant thereto.

108.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

109.     The defendant police officers and defendant City of New York, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

18

110.     As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was arrested, and he was humiliated, without probable cause.

111.     As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer violations of his civil rights, emotional distress, anguish, fear, humiliation, loss of freedom, legal expenses, and damages to his reputation and standing within his community.

112.     As a result of defendants' impermissible conduct, plaintiff demands judgment against defendant sin a sum of money to be determined at trial.

## EIGHTH CLAIM
### (MUNICIPAL LIABILITY UNDER *MONELL*)

113.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

114.     Defendants arrested and incarcerated plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty and well-being, safety and constitutional rights.

115.     The acts complained of were carried out by the aforementioned individual defendant police officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

116.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officer and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

117.    The aforementioned customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

       a.    Wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e. arrest quotas).

118.    The particular arrest of the plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

119.    The particular arrest of the plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual defendant officers who participated in the plaintiff's arrest made the determination to search and arrest plaintiff before determining why the plaintiff should be searched and arrested.

120.    The particular arrest of the plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the plaintiff was arrested despite the fact that probable cause to search or arrest an individual is not met by observing an individual standing at the scene of a narcotics transaction with the individual arrested ten-days prior for that narcotics transaction.

121.    The particular arrest of the plaintiff is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the plaintiff was arrested despite the fact that probable cause to search or arrest an individual is not

met in this case for this plaintiff because the description provided by the defendant UC #C0039 during his "buy and bust" report did not fit the description of the plaintiff when he was arrested.

122.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department evinced a deliberate indifference to the safety, well-being and constitutional rights of plaintiff Kevin Alvarez.

123.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate causes of the constitutional violations suffered by plaintiff Kevin Alvarez as alleged herein.

124.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff Kevin Alvarez as alleged herin.

125.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff Kevin Alvarez was falsely arrest and incarcerated.

126.    As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer a violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses, and damages to his reputation and standing in his community.

127.    As a result of defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

## NINTH CLAIM

## (EQUAL PROTECTION UNDER 42 U.S.C. §§ 1981 AND 1983)

128.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

129.    At all times described herein, the plaintiff Kevin Alvarez was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

130.    Defendant police officers arrested and incarcerated plaintiff Kevin Alvarez in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty, well-being, safety, and constitutional rights.

131.    The acts complained of were carried out by the aforementioned individual defendant police officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

132.    Plaintiff Kevin Alvarez was falsely accused of crimes and violations and was taken into police custody and detained against his will.

133.    Following his arrest, plaintiff Kevin Alvarez was charged with crimes and violations.

134.    The above-described charges were a pretext intended to justify the plaintiff's illegal arrest.

135.    The actions of the defendant police officers heretofore described, constituted unlawful detention, imprisonment, and malicious prosecution and were designed to

and did cause pain and suffering both in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

136.   As discussed by the court in *Brown v. City of Oneonta*, 221 F.3d 329 (1999), the existence of an equal protection violation may be confirmed by a finding that a similarly situated group of non-minority individuals is treated differently.  That is, the plaintiff must allege that a government actor intentionally discriminated against them on the basis of race.

137.   On March 1, 2010, the New York Times published an Op-Ed piece entitled "Watching Certain People," wherein the author cited to New York City Police Department Statistics showing that of the 2,798,461 stops made by police officers during the years 2004 through 2009, African-American men accounted for 1,444,559 of those stops, and Hispanics accounted for 843,817 of those stops, or 51.6 percent and 30.1 percent respectively. The vast majority of those stopped, 88.2 percent, were not guilty of any crime.[4]

138.   On February 22, 2011, the New York Daily News published an article citing New York Police Department stops for the year 2010, which numbered 601,055.  This

---

[4] Herbert, Robert, "Watching Certain People," New York Times, March 1, 2010.  Article incorporated herein by reference and available online at:
http://www.nytimes.com/2010/03/02/opinion/02herbert.html?scp=7&sq=police%20stop%20frisk%20african%20american%20men&st=cse

figure marked a 4.3 percent increase from the year 2009, and African-American and Latino men account4d for approximately 85 percent of all stops.[5]

139.    The particular arrest of the plaintiff Kevin Alvarez is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as trespassing, resisting arrest, disorderly conduct, obstruction of governmental administration, and narcotics-related offenses in the absence of probable cause to arrest, due to perceived ease of prosecution of such minority individuals.

140.    The particular arrest of the plaintiff Kevin Alvarez is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, because the defendant police officers initiated a search and seizure of the plaintiff Kevin Alvarez despite the fact that he did not fit the description of the "lost subject" and merely because of the fact that the plaintiff Kevin Alvarez was standing alongside a man who was arrested ten-days before in the same vicinity of the plaintiff's residence.

141.    The defendant police officers, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

142.    As a result of the aforementioned conduct, the defendants have violated plaintiff Kevin Alvarez's constitutional rights to equal protection, and the plaintiff is entitled to

---

[5] Parascandola, Rocco, "New York Police Department Stopped More than 600,000 in 2010, the Highest Number Ever Recorded," February 22, 2011.  Article incorporated herein by reference and available online at: http://articles.nydailynews.com/2011-02-22/news/29442269_1_latino-men-fight-crime-new-yorkers

seek redress under 42 U.S.C. §§ 1981 and 1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

143.    As a result of the above constitutionally impermissible conduct, plaintiff was caused to suffer a violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing in his community.

144.    As a result of the defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

145.    All of the foregoing acts by defendants deprived plaintiff Kevin Alvarez of federally protected rights, including but not limited to, the right:

    a.   Not to be deprived of liberty without due process of law;

    b.   To be free from seizure and arrest not based upon probable cause;

    c.   To be free from unwarranted and malicious criminal prosecution;

    d.   To be free from malicious abuse of process;

    e.   To receive equal protection under the law.

(This Space Left Intentionally Blank)

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.  Compensatory damages in an amount to be determined by a jury;

b.  Punitive damages in an amount to be determined by a jury;

c.  Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
          October 13, 2015

_____

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, P.L.L.C.
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 504-1440
mk@kushlawgroup.com